IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| MICHAEL EUGENE HOLSEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 415-198 |
| | ) | (Formerly CR 413-119) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at the Federal Correctional Institution in Jesup, Georgia, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

### A.    Indictment.

On June 10, 2013, the grand jury in the Southern District of Georgia issued an indictment charging Petitioner and codefendant Demetrius Lorenzo Mumford with a host of crimes related to cocaine distribution and firearms. United States v. Mumford, et al., CR 413-119, doc. no. 3 (S.D. Ga. June 10, 2013) (hereinafter "CR 413-119"). Against Petitioner, the indictment asserted charges for conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846(a)(1) and 18 U.S.C. § 2 ("Count One"), conspiracy, in violation of 18 U.S.C. § 371 ("Count Two"), unlicensed dealing in firearms, in violation of

18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D) ("Count Three"), two counts of felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1) ("Counts Five-Six"), three counts of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) ("Counts Twelve-Fourteen"), and three counts of carrying a firearm in relation to crime, in violation of 18 U.S.C. § 924(c) ("Counts Eighteen-Twenty"). Id. The Court appointed attorney James C. Garner to represent Petitioner. Id., doc. no. 54.

### B.    Agreement to Plead Guilty.

On October 24, 2013, Petitioner pleaded guilty to Counts Five and Nineteen. Id., doc. nos. 38, 41-42, 52, 68. The plea agreement contained the following factual basis for the plea:

> [O]n or about December 19, 2012, in Chatham County, within the Southern District of Georgia, the defendant, MICHAEL EUGENE HOLSEY, who before that time had been convicted of a felony, an offense punishable by imprisonment for more than one year, aided and abetted by others known and unknown, did knowingly possess, in and affecting interstate commerce, a firearm, that is, a Beretta, Model Px4 Storm, .40 caliber semiautomatic pistol, serial number PY41604 . . . .
>
> [O]n or about December 19, 2012, in Chatham County, within the Southern District of Georgia, the defendant, MICHAEL EUGENE HOLSEY, knowingly and unlawfully, and during and in relation to the drug trafficking offense charged in Count 13, used and carried a firearm, that is, a Beretta, Model Px4 Storm, .40 caliber semiautomatic pistol, serial number PY41604 . . . .

Id., doc. no. 52, p. 4.

Petitioner attested he had sufficient time to review his case with his attorney, fully understood his rights and those he was giving up by pleading guilty, and voluntarily agreed to the plea agreement. Id. at 7.

### C.    Change of Plea Hearing.

During the change of plea hearing, United States District Judge William T. Moore,

Jr., established Petitioner's competence to enter a guilty plea if he desired.  Id., doc. no. 68, pp. 22-23.  Petitioner also testified under oath he had adequate time to discuss his case with his attorney and was entirely satisfied with the services rendered by Mr. Garner.  Id. at 10-11. Judge Moore read the indictment and asked if Petitioner understood the charge therein.  Id. at 11-13.  Petitioner confirmed he understood.  Id.  Judge Moore also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he understood those rights.  Id. at 7-9.

Among the rights explained, Judge Moore reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent.  Id. Petitioner affirmed he had not been pressured or promised anything to plead guilty, id. at 20-22, nor had anyone predicted Petitioner's exact sentence.  Id. at 22.  Judge Moore specifically asked Petitioner whether "anyone [had] done anything that you consider to be wrong or unfair which has forced you to plead guilty," to which Petitioner responded, "No, sir."  Id. at 20.  Judge Moore found Petitioner's plea to be made voluntarily and with an understanding of the charges and the plea's consequences.  Id. at 22-23.

Judge Moore heard the factual basis for Petitioner's guilty plea from Special Agent Louis Valoze with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF).  Id. at 24.  Agent Valoze summarized the facts underlying Petitioner's offense as follows:

> [On December 19, 2012,] the defendant met me at an undercover location.  He provided me with approximately half-an-ounce of cocaine, and after that he provided me with a Beretta Model Px4 Storm .40 caliber pistol loaded with 11 rounds of ammunition . . . [i]n exchange for $1,050 for both items.

Id. at 24-25.  A Georgia Bureau of Investigations lab analysis found the purported cocaine to be approximately 12.9 grams of cocaine hydrochloride.  Id. at 25.  Investigation also revealed the firearm had been shipped in interstate commerce, and Petitioner had previously been convicted of possession with intent to distribute marijuana on November 19, 2012.  Id. Petitioner admitted to the factual basis for his offense, stating, "I admit to doing the things he said that I did . . . . I went to the warehouse and sold him a gun and a half-a-ounce of cocaine."  Id. at 26.

Judge Moore accepted the guilty plea, finding a sound factual basis for it.  Id. at 27.

**D.**      **Presentence Investigation Report (PSI).**

The United States Probation Office prepared a PSI, which set Petitioner's base offense level at twenty.  PSI ¶ 13.  Petitioner's adjusted offense level was twenty-eight after enhancements of: (1) four levels because the offense involved between three and seven firearms; (2) two levels because the offense involved a stolen firearm; and (3) four levels because Petitioner engaged in trafficking of firearms.  PSI ¶¶ 14-16, 21.  Although Petitioner was only convicted of possessing and carrying one firearm, Petitioner sold ATF agents three firearms in total, and therefore the probation officer attributed three firearms to Petitioner for offense calculation purposes.  PSI ¶¶ 7-8.  Petitioner's adjusted offense level was decreased three points for acceptance of responsibility, resulting in a total offense level of twenty-five. PSI ¶¶ 23-25.  Based on a total offense level of twenty-five and a criminal history category of III, Petitioner's guideline imprisonment range was seventy to eighty-seven months, plus sixty months consecutive on Count Nineteen.  PSI ¶ 51.

**E.**      **Sentencing.**

Sentencing was held on March 19, 2014.  CR 413-119, doc. nos. 51, 66.  Petitioner

4

filed no objections to the PSI.  PSI Addendum.  After hearing arguments from Mr. Garner

and Assistant United States Attorney ("AUSA") Cameron Ippolitto, Judge Moore provided

Petitioner with an opportunity to make a personal statement.  CR 413-119, doc. no. 66, p. 9.

Petitioner told Judge Moore,

> First I would like to take this opportunity to apologize to the community and
> the Court.  No matter what justifications I may have used in the past, I now
> know that my actions, past and present, have had nothing but negative effect
> on myself, and more importantly, the community.  For this I am truly sorry.
>
> I have wasted a lot of my time getting into trouble and surrounding myself
> with the wrong people.  I have ignored my mother's warnings and taken for
> granted the Court's leniency.  These errors in judgment have led me here.  I
> make no justifications or excuses.  I cannot change the past, only look to the
> future.

Id. at 9-10.

Judge Moore sentenced Petitioner to seventy months as to Count Five and sixty

months as to County Nineteen to run consecutively, for a total term of one hundred thirty

months of incarceration, five years of supervised release, and a $100.00 special assessment.

Id., doc. no. 53; doc. no. 68, pp. 11-14.  Final judgment was entered on March 21, 2014.  Id.,

doc. no. 53.  Petitioner did not file an appeal.

### F.      Post-Conviction Proceedings.

On June 29, 2015, United States Attorney Edward J. Tarver disclosed to the Court

information regarding an "improper relationship" between AUSA Ippolito and Agent

Valoze.  In Re: Ippolito & Valoze, MC 215-002, doc. no. 1 (S.D Ga. Feb. 11, 2015).  The

Court ordered the United States Attorney to "submit a list of all cases . . . in which AUSA

Ippolito and Agent Valoze collaborated."  Id.  The list included Petitioner's case.  Id., doc.

no. 4-1, p. 9.

On June 29, 2015, in response to this disclosure, Petitioner filed the present 28 U.S.C. § 2255 motion.  (Doc. no. 1.)  Petitioner alleges four grounds of relief: (1) counsel was ineffective for failing to investigate Petitioner's pretrial allegations of entrapment, defense of public authority, defense of entrapment by estoppel, and defense of outrageous government misconduct; (2) counsel was ineffective for failing to file a motion to dismiss the indictment or appeal the conviction; (3) the government withheld evidence of outrageous government misconduct between AUSA Ippolito and Agent Valoze, rendering his conviction unconstitutional; and (4) Petitioner is actually innocent.  (Doc. nos. 1, 7.)

In particular, Petitioner alleges Agent Valoze and a confidential informant caught him selling cocaine and firearms.  (Doc. no. 1, pp. 17-18, 20-21.)  To avoid arrest and prosecution, Petitioner began purchasing firearms and cocaine from the community and returning them to Agent Valoze and this confidential informant for a significant profit as a form of community cleanup.  (Id.)  At all times, he knew he was selling guns and drugs to government agents.  (Id.)  Petitioner contends the actions of Agent Valoze and the confidential informant created valid defenses of entrapment, entrapment by estoppel, and acting under public authority.  (See generally doc. nos. 1, 7.)  Petitioner further contends the government violated Brady by refusing to reveal impeachment evidence of Agent Valoze and AUSA Ippolito's affair.  (Id.)

Respondent asserts Petitioner's motion is untimely and meritless.  (Doc. no. 6.)

## II.    DISCUSSION

### A.    There is No Need for an Evidentiary Hearing.

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to

no relief . . . ." <u>Winthrop-Redin v. United States</u>, 767 F.3d 1210, 1216 (11th Cir. 2014)

(quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or

those which are based upon unsupported generalizations.  Nor is a hearing required where

the petitioner's allegations are affirmatively contradicted in the record." <u>Holmes v. United</u>

<u>States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a petitioner is not

entitled to an evidentiary hearing where he asserts "merely conclusory allegations

unsupported by specifics or contentions that in the face of the record are wholly incredible."

<u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); <u>see also</u> <u>Lynn v.</u>

<u>United States</u>, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

   While ineffective assistance of counsel claims often require a hearing for

development of an adequate record, an evidentiary hearing is not required every time such a

claim is raised.  <u>Rosin v. United States</u>, 786 F.3d 873, 878-79 (11th Cir. 2015); <u>Vick v.</u>

<u>United States</u>, 730 F.2d 707, 708 (11th Cir. 1984).  Because Petitioner's claims lack merit as

a matter of law or are otherwise affirmatively contradicted by the record, no evidentiary

hearing is necessary.

   **B.**  **Grounds One and Two Are Untimely Under § 2255(f).**

   28 U.S.C. § 2255(f), as amended by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), provides a one-year statute of limitations for § 2255 motions that

runs from the latest of four possible dates:

   1.   the date on which the judgment of conviction becomes final;

   2.   the date on which the impediment to making a motion created by
        governmental action in violation of the Constitution or laws of the
        United States is removed, if the movant was prevented from making a
        motion by such governmental action;

3.      the date on which the right asserted was initially recognized by the
Supreme Court, if that right has been newly recognized by the Supreme
Court and made retroactively applicable to cases on collateral review;
or

4.      the date on which the facts supporting the claim or claims presented
could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Judgment entered in Petitioner's case on March 21, 2014, CR 413-119, doc. no. 53,

and because Petitioner did not file a timely direct appeal, his conviction and sentence became

final fourteen days later.  See Mederos v. United States, 218 F.3d 1252, 1253 (11th Cir.

2000) (explaining where no timely notice of appeal is filed and motion for leave to file out of

time appeal is denied, judgment of conviction final on expiration of deadline for filing notice

of appeal); Fed. R. App. P. 4(b)(1).  Petitioner did not file his present motion until June 29,

2015.[1]  (See doc. no 1, p. 12.)  Thus, Petitioner filed his § 2255 motion more than one-year

after his conviction became final and his motion is untimely.

Petitioner contends his motion is based on facts "discovered on January 30, 2015,"

the date of this Court's order detailing the government's disclosure of the improper

relationship between Agent Valoze and AUSA Ippolito, and therefore his motion is timely

pursuant to 28 U.S.C. § 2255(f)(4).  (Doc. no. 7, p. 2.)  Certainly, this is true as to Ground

Three.  As to Ground One, however, Petitioner was well aware of his belief he was acting on

authority of Agent Valoze in furtherance of a government cleanup of the community before

he was even charged with this offense.  (See doc. no. 1, pp. 17-18, 20-21.)  Indeed, he admits

---

[1]Under Houston v. Lack, 487 U.S. 266, 276 (1988), Petitioner's motion is deemed filed
on the date of delivery to prison officials for mailing.  The Court construes the date of
Petitioner's signature as the date of delivery to prison officials for mailing.  See Adams v. United
States, 173 F.3d 1339, 1341 (11th Cir. 1999) (per curiam).

he knew all the relevant facts before pleading guilty, but was "deterred by this Court's rejection and disbelief of identical claims brought before the Court by other victims to this outrageous government conduct." (Doc. no. 1, p. 26.) The same is true for Ground Two, which alleges defense counsel failed to seek dismissal of the indictment or appeal the conviction. Petitioner knew the bases of Ground Two at the time of final judgment. Therefore, Petitioner is not entitled use the statute of limitations period found at Section 2255(f)(4), and the claims in Grounds One and Two are untimely.

### C.   Petitioner Has Not Demonstrated He Is Entitled to Equitable Tolling of Grounds One and Two or a Fundamental Miscarriage of Justice Has Occurred.

Nevertheless, an otherwise untimely § 2255 petition may be considered if a petitioner can demonstrate that either he is entitled to equitable tolling or a fundamental miscarriage of justice has occurred. Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007). Nevertheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003). The petitioner bears the burden of proving his entitlement to equitable tolling and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both. See Damren v. Florida, 776 F.3d 816, 821-22 (11th Cir. 2015).

Consideration of an otherwise untimely petition for federal habeas corpus relief may also be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has probably resulted in the conviction of one who is actually innocent." McQuiggin v. Perkins, 569 U.S. __, 133 S. Ct. 1924, 1931 (2013) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000). The actual innocence exception "is exceedingly narrow in scope," and a time-barred petitioner seeking to invoke it must be able "(1) to present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (citations omitted), cert. denied, 133 S. Ct. 351 (2012). As the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin, 133 S. Ct. at 1933 (emphasis added).

Petitioner does not argue extraordinary circumstances prevented him from timely asserting Grounds One and Two. Further, Petitioner has not presented any new evidence to suggest he did not commit the offense to which he pleaded guilty such that no reasonable juror would have convicted him. Indeed, his new conclusory assertion that he sold firearms at the behest of Agent Valoze is contradicted by Petitioner's sworn testimony at his change of plea hearing. See § III.D.

The only new evidence Petitioner presents is the relationship between AUSA Ippolitto and Agent Valoze. This impeachment evidence does nothing to suggest Petitioner

did not commit the offense.   Indeed, a reasonable juror could have convicted Petitioner despite hearing impeachment of Agent Valoze concerning his relationship with AUSA Ippolitto.   The jury would have heard testimony at trial that Petitioner entered an undercover location, provided agents with approximately half-an-ounce of cocaine and a Beretta Model Px4 Storm .40 caliber pistol loaded with 11 rounds of ammunition, and received $1,050 in exchange.   CR 413-119, doc. no. 68, pp. 24-25.   Therefore, Petitioner is not eligible for equitable tolling, nor has he shown a fundamental miscarriage of justice.

> **D.      Even If His Claims Were Timely, Petitioner Has Not Shown Entitlement to Relief on Grounds One and Two.**

> **1.      Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).   <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003).   Petitioner must show counsel was constitutionally ineffective under the two prongs of <u>Strickland</u> by proving defense counsel's performance was deficient and prejudicial. Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."   <u>Strickland</u>, 466 U.S. at 688.   In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."   <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001).   Strategic decisions are entitled to a "heavy measure of deference." <u>Strickland</u>, 466 U.S. at 691.   "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."   <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).   "The test has nothing to do with what the best lawyers would have done.   Nor is the test even what

most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694).  As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012).  In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental

12

interest in the finality of guilty pleas." <u>Hill</u>, 474 U.S. at 58. Therefore, Petitioner must show both counsel's representation fell below an objective standard of reasonableness, *and* there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. <u>Id.</u> at 56-59.

### 2. Petitioner's Claims in Grounds One and Two that Counsel Failed to Investigate Government Misconduct and File a Motion to Dismiss Are Meritless.

There is a strong presumption that Petitioner's statements made under oath at his plea hearing are true. As the Supreme Court explained,

> For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

<u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977); <u>see also</u> <u>United States v. Gonzalez-Mercado</u>, 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true.").

As detailed *supra*, Judge Moore thoroughly questioned Petitioner regarding his understanding of his guilty plea, its consequences, and his counsel's services. Judge Moore specifically inquired about Petitioner's satisfaction with Mr. Garner:

THE COURT: How long have you known Mr. Garner, your lawyer?

THE DEFENDANT: [S]ince the case started [in June]. . . .

THE COURT: Has he gone over your case with you and tried to explain to you any possible defenses?

THE DEFENDANT: Yes, sir.

interest in the finality of guilty pleas." <u>Hill</u>, 474 U.S. at 58. Therefore, Petitioner must show both counsel's representation fell below an objective standard of reasonableness, *and* there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. <u>Id.</u> at 56-59.

### 2. Petitioner's Claims in Grounds One and Two that Counsel Failed to Investigate Government Misconduct and File a Motion to Dismiss Are Meritless.

There is a strong presumption that Petitioner's statements made under oath at his plea hearing are true. As the Supreme Court explained,

> For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

<u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977); <u>see also</u> <u>United States v. Gonzalez-Mercado</u>, 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true.").

As detailed *supra*, Judge Moore thoroughly questioned Petitioner regarding his understanding of his guilty plea, its consequences, and his counsel's services. Judge Moore specifically inquired about Petitioner's satisfaction with Mr. Garner:

THE COURT: How long have you known Mr. Garner, your lawyer?

THE DEFENDANT: [S]ince the case started [in June]. . . .

THE COURT: Has he gone over your case with you and tried to explain to you any possible defenses?

THE DEFENDANT: Yes, sir.

THE COURT:  Have you had enough time to meet and talk with your lawyer?

THE DEFENDANT:  Yes, sir.

THE COURT:  How many occasions have you and Mr. Garner discussed your case?

THE DEFENDANT:  Four . . . .

THE COURT:  Are you satisfied with your lawyer and the way that he has represented you in this case?

THE DEFENDANT:  Yes, sir.

CR 413-119, doc. no. 68, pp. 10-11.

Now, nearly two years later, Petitioner alleges counsel failed to investigate his claims of government misconduct and failed to file a motion to dismiss or an appeal.  (Doc. no. 1, p. 4.)  These allegations directly contradict Petitioner's sworn testimony during his change of plea hearing that he had plenty of time to discuss the plea agreement with his lawyer and was satisfied with his representation.  Furthermore, Petitioner's sworn statements at his change of plea contradict his assertion in Ground One of counsel's failure to investigate his defenses of entrapment and Agent Valoze's authorization of his supposed community cleanup effort.  During his change-of-plea hearing, he made no claim whatsoever he had been entrapped or tricked or authorized into committing his crime, though this Court gave him ample and repeated opportunities to do so.  Therefore, Petitioner's "conclusory allegations unsupported by specifics [are] subject to summary dismissal."  Blackledge, 431 U.S. at 74; see also United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ("[I]f the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely[.]").

14

Moreover, Petitioner never avers that but for counsel's advice, he would have proceeded to trial. (Doc. nos. 1, 7.) Indeed, Petitioner indicates the primary deterrent in his failure to proceed to trial was "this Court's rejection and disbelief of identical claims brought before the Court by other victims to this outrageous government misconduct," not his counsel's advice. (Doc. no. 1, p. 26.) He never suggests there is a reasonable probability that but for counsel's alleged errors he would not have pleaded guilty and would have gone to trial. See Hill, 474 U.S. at 59. Therefore, Petitioner fails to carry his heavy burden to show prejudice under the second prong of Strickland, and his ineffective assistance of counsel claims in Grounds One and Two do not afford relief.

### 3.    Petitioner's Guilty Plea was Knowingly and Voluntarily Entered.

Having determined Petitioner did not receive constitutionally ineffective assistance of counsel for failing to investigate Petitioner's pretrial allegations or failing to file a motion to dismiss or appeal his conviction, the Court will address any implication derived from the § 2255 motion that Petitioner's guilty plea was otherwise not knowingly and voluntarily entered.

### a.    Standard for Enforceability of Guilty Pleas.

Once a guilty plea becomes final, unless the record demonstrates the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 569 (1989). In conducting its analysis, the Court starts with the proposition a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows: "The Fourteenth

Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

> **b.      Judge Moore's Colloquy with Petitioner Satisfied the Three Core Principles Required for Acceptance of a Guilty Plea.**

Judge Moore informed Petitioner in clear terms of the charge to which he was pleading guilty, as well as the penalties that might be imposed in the event of Petitioner's conviction, and Petitioner testified he understood the charge and penalties. CR 413-119, doc.

no. 68, pp. 11-20.  Petitioner also admitted to the facts presented by the government as the factual basis for the pleas and told Judge Moore there was no reason he should not accept Petitioner's guilty plea.  Id. at 26-27.  Judge Moore provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights.  Id. at 7-10.  Petitioner testified no one had made him any promises other than those contained in the plea agreement, and his decision to plead guilty was free and voluntary, without pressure or coercion from Mr. Garner.  Id. at 20-22.  Petitioner also testified that he had reviewed his case with counsel and was satisfied with the help he had received from counsel.  Id. at 10-11. Thus, Judge Moore's thorough plea colloquy ensured Petitioner understood both the nature of the charge and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty.  See Moriarty, 429 F.3d at 1019.  Petitioner has not argued, let alone shown, a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea.  See Dominguez Benitez, 542 U.S. at 83.

As such, Petitioner will not now be heard to claim his guilty plea was not knowingly and voluntarily entered.  Any such assertions are contradicted by the record of the Rule 11 hearing and Petitioner's sworn testimony at that proceeding.  See Stitzer, 785 F.2d at 1514 n.4 ("[I]f the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely[.]").

### E.      Petitioner Has Not Shown Entitlement to Relief on Ground Three.

In Ground Three, Petitioner argues the improper relationship between AUSA Ippolito and Agent Valzone constituted "outrageous government misconduct" and a due process

violation, and that the government's failure to disclose the relationship violated <u>Brady</u>.  (Doc. no. 1, pp. 24-27.)  These claims are without merit.

To the extent Petitioner bases his claims on his new allegations of entrapment, acting under public authority, entrapment by estoppel, and outrageous governmental misconduct by Agent Valoze in running the undercover warehouse operation, those claims are untimely as discussed *supra* § II.B.   Furthermore, to the extent Petitioner contends the government improperly withheld evidence of AUSA Ippolito and Agent Valoze's affair in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), that claim likewise lacks merit.  Under <u>Brady</u>, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment. . . ."  <u>Id.</u> at 87.  Here, evidence of the affair amounts at most to impeachment evidence that could have been used on cross-examination of Agent Valoze had Petitioner proceeded to a jury trial.  However, "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."  <u>United States v. Ruiz</u>, 536 U.S. 622, 633 (2002).  Therefore, Petitioner was not entitled to information about the affair before deciding whether or not he would plead guilty.

Accordingly, Ground Three is without merit.

**F.     Petitioner Has Not Shown Entitlement to Relief Based on his Actual Innocence Claim in Ground Four.**

As discussed at length *supra*, Petitioner has failed to establish his actual innocence of the offense to which he pleaded guilty.  <u>See</u> § II.C.   Accordingly, Petitioner's actual innocence claim is without merit.

18

### G.     A Certificate of Appealability Should Not Issue.

The Court also recommends denial of a certificate of appealability ("COA") and denial of *in forma pauperis* ("IFP") status on appeal. A federal prisoner must obtain a COA before appealing the denial of his motion to vacate. The District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Applying the COA standards, which are set forth in Brown v. United States, 407 CV 085, 2009 WL 307872, at *1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues regarding the instant § 2255 motion, so no COA should issue. 28 U.S.C. § 2253(c)(1); see Slack v. McDaniel, 529 U.S. 473, 484 (2000) ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case . . . no appeal would be warranted."); see also Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed notice of appeal). Since there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, IFP status on appeal should likewise be denied. 28 U.S.C. § 1915(a)(3).

## III.     CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent. The Court further **RECOMMENDS** Petitioner be

**DENIED** a COA and permission to appeal IFP.

SO REPORTED and RECOMMENDED this 16th day of October, 2017, at Augusta, Georgia.


BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA